OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Tenth Judicial District (hereinafter the Grievance Committee) served the respondent with a verified petition dated June 17, 2009, containing 10 charges of professional misconduct.
Charges one and two emanate from a common set of factual allegations, as follows:
In or about 2000, the respondent was hired as in-house counsel by a company or companies owned or controlled by, or affiliated with, Thomas Kontogiannis and/or his family members or business associates (hereinafter collectively referred to as the Kontogiannis family).
Between in or about 2000 and in or about June 2004, the respondent worked as a salaried employee for a company or companies owned or controlled by, or affiliated with, the Kontogiannis family. During that time, the respondent continued, on a limited basis, to represent private clients and practice law unrelated to his employment by the Kontogiannis family.
At or about that time, Thomas Kontogiannis, individual members of the Kontogiannis family, and/or companies owned or controlled by, or affiliated with, the Kontogiannis family, were the owners of record of various parcels of real property.
*46 During this period, the respondent maintained an attorney escrow account at Astoria Federal Savings Bank denominated “Thomas F. Cusack, Mortgage Closing Account, Attorney Trust Account,” bearing account No. xx/xx/1634 (hereinafter the Astoria Federal escrow account).
Between in or about 2000 and in or about March 2004, the respondent utilized the Astoria Federal escrow account to deposit and disburse funds entrusted to him in real estate and/or mortgage loan transactions in which he represented lenders providing mortgage financing.
At all relevant times, members of the Kontogiannis family, including John T. Michael, a nonattorney and relative of Thomas Kontogiannis, owned and/or operated two mortgage companies, CIP Mortgage and Coastal Capital Corp., which originated and/or provided first and second mortgage loans to borrowers.
Between in or about 2003 and in or about March 2004, the respondent was appointed by the Kontogiannis family, Coastal Capital Corp., CIP Mortgage, or some other company owned or controlled by, or affiliated with, the Kontogiannis family, to represent the interests of Coastal Capital Corp. and/or CIP Mortgage, and act as their attorney, at closings on numerous mortgage loan transactions.
At or about that time, the respondent represented Coastal Capital Corp. and/or CIP Mortgage, as attorney, at numerous closings on purchase-money mortgage and/or refinance mortgage loan transactions. In many of the transactions in which the respondent represented Coastal Capital Corp. and/or CIP Mortgage, as attorney, the borrowers were members of, or individuals affiliated with, the Kontogiannis family, or were companies owned or controlled by, or affiliated with, the Kontogiannis family. In some of these same transactions, the sellers/owners of the subject properties were also members of, or individuals affiliated with, the Kontogiannis family, or were companies owned or controlled by, or affiliated with, the Kontogiannis family (hereinafter, transactions wherein the respondent represented Coastal Capital Corp. and/or CIP Mortgage, as attorney, and a Kontogiannis family member or an affiliated individual company was the borrower and/or the seller/owner of the subject property, shall be referred to as Coastal/CIP-Kontogiannis transactions).
During this period, the respondent knew or should have known that his clients, Coastal Capital Corp. and/or CIP Mortgage, and the borrowers and/or the sellers/owners of some *47 of the subject properties in the aforementioned transactions, were members of, or individuals affiliated with, the Kontogiannis family or companies owned by, or affiliated with, the Kontogiannis family.
Between in or about 2003 and in or about March 2004, in many of the Coastal/CIP-Kontogiannis transactions, members of the Kontogiannis family attended the closings on behalf of the borrowers and/or the sellers/owners of record of the subject properties without the assistance of independent counsel.
In some of the Coastal/CIP-Kontogiannis transactions, Christopher Michael, a member of the Kontogiannis family, attended the closings in place of the respondent and provided services required to be performed by the respondent, as lender’s counsel, at the closings.
At or about this time, the respondent’s Astoria Federal escrow account received wire transfers of funds from Coastal Capital Corp. and/or CIP Mortgage, representing mortgage proceeds attributable to Coastal/CIP-Kontogiannis transactions. In connection with those transactions, mortgage loan proceeds were disbursed from the Astoria Federal escrow account to members of the Kontogiannis family or to companies owned or controlled by, or affiliated with, the Kontogiannis family, including CIP Mortgage and Doc Prep, Inc., a document preparation and loan settlement agency in Greenvale, New York.
At many of the closings, the respondent did not disburse funds to satisfy or extinguish existing mortgages or liens on the subject properties; did not disburse funds payable to title abstract or insurance companies in order to purchase title insurance policies insuring the priority of Coastal Capital Corp.’s and/or CIP Mortgage’s new mortgage liens; did not disburse funds to title abstract or insurance companies or any other entities for the purpose of paying mortgage taxes or any other transfer taxes, as required; and did not disburse funds to ensure that the new mortgages and/or deeds would be recorded at the county clerk’s office in the counties in which the subject properties were located.
Following the closings of the Coastal/CIP-Kontogiannis transactions, the respondent failed to take appropriate steps to ensure that the new mortgages and/or deeds were recorded at the county clerk’s office in the counties in which the subject properties were located. The respondent’s failure to ensure that the new mortgages and/or deeds were recorded contributed to the lack of a public record of Coastal Capital Corp.’s and/or CIP *48 Mortgage’s liens against the subject properties and/or the identities of the new owners of the subject properties; enabled the Kontogiannis family to remortgage the subject properties and borrow additional funds against the properties from unsuspecting lenders and/or convey the subject properties to unsuspecting buyers without satisfying the Coastal Capital Corp. and/or CIP Mortgage loans; and contributed to the Kontogiannis family’s ability, through Coastal Capital Corp., to bundle the unrecorded notes and mortgages among legitimate notes and mortgages and sell those notes and mortgages as a package to investors on the secondary mortgage market, thereby obtaining additional funds secured, in part, by the subject properties, without notice to the investors that the purported liens evidenced by the mortgages were not of record.
Charge one alleges that the respondent engaged in a pattern of conduct adversely reflecting on his fitness as a lawyer by allowing nonattorneys to improperly regulate and/or influence his conduct and the management and use of his escrow account for the nonattorneys’ own purposes, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
Charge two alleges that the respondent engaged in numerous conflicts of interest by permitting persons who recommended, employed, or paid him to render legal services for another, to direct or regulate his professional judgment in rendering such legal services, in violation of Code of Professional Responsibility DR 5-107 (b) (22 NYCRR 1200.26 [b]).
Charges three, four, five, six, seven, and eight emanate from a common set of factual allegations, as follows:
On or about August 4, 2003, the respondent was appointed by Thomas Kontogiannis, the Kontogiannis family, Coastal Capital Corp., CIP Mortgage, or some other company owned or controlled by, or affiliated with, Thomas Kontogiannis and/or the Kontogiannis family to represent Coastal Capital Corp.’s interests, and act as its attorney, at a closing on a purchase-money mortgage loan to be made by Coastal Capital Corp. to an individual named Michael I. Michael (hereinafter the August 4, 2003 closing). The borrower/purchaser, Michael I. Michael, is believed to be related to Thomas Kontogiannis and John T. Michael, the Kontogiannis family member who was president of Coastal Capital Corp.
The August 4, 2003 closing occurred at One Plaza Road, Suite 103, Greenvale, N.Y., the offices of Doc Prep, Inc. At or about *49 that time, Doc Prep., Inc., was owned and operated by Chloe Kontogiannis, the daughter of Thomas Kontogiannis, and/or Ray E. Shain, a then-disbarred attorney and business associate of Thomas Kontogiannis.
At the August 4, 2003 closing, Michael I. Michael was purchasing a residential property located in Westchester County from a third party, James F. Ramaley, for the sum of $740,000. Christopher Michael, a relative of Michael I. Michael and paralegal employed by Doc Prep, Inc., handled the closing for Coastal Capital Corp. on the respondent’s behalf. The respondent did not appear at the August 4, 2003 closing until it was concluded.
On or about August 4, 2003, the respondent’s Astoria Federal escrow account received two wire transfers from Coastal Capital Corp. totaling $630,269.16, representing the full proceeds of the purchase-money mortgage loan to Michael I. Michael for the purchase of the Westchester property.
At or prior to the August 4, 2003 closing, the respondent provided escrow checks from the Astoria Federal escrow account to be used in connection with the transaction. A rubber stamp was used to affix the respondent’s signature to the escrow checks.
At the August 4, 2003 closing, the cash balance due from Michael I. Michael to the seller, James F. Ramaley, for the purchase of the Westchester property, net of the mortgage loan proceeds of $630,269.16, was approximately $92,961.66.
By the conclusion of the closing, Christopher Michael had drawn nine checks against the respondent’s Astoria Federal escrow account, totaling $728,250.50, to pay the balance of the sale price to, or on behalf of, the seller, James F. Ramaley, as well as to cover closing expenses incurred by Michael I. Michael in connection with the transaction. Each of the nine checks drawn against the Astoria Federal escrow account at the August 4, 2003 closing was honored when presented for payment following the closing. Inasmuch as the Astoria Federal escrow account contained only $630,269.16 relative to the closing, Christopher Michael drew checks which, when honored, resulted in the invasion of $97,981.34 of other funds being maintained by the respondent in the Astoria Federal escrow account. The net effect of this $97,981.34 over-disbursement at the August 4, 2003 closing was that Michael I. Michael purchased the Westchester property using funds from the Astoria Federal escrow account, without contributing his own funds to the transaction.
*50 At or following the August 4, 2003 closing, the respondent failed to independently confirm that the total amount of the checks drawn against his Astoria Federal escrow account equaled the amount wired into the account by Coastal Capital Corp. Moreover, the respondent permitted Christopher Michael to handle the closing without any oversight or supervision. At or following the closing, the respondent failed to timely and/or sufficiently review the work that Christopher Michael performed on his behalf so as to uncover and rectify the overdraft that occurred.
Charge three alleges that the respondent converted client funds entrusted to him as a fiduciary to a use other than that for which they were intended, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
Charge four alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer by converting client funds entrusted to him as a fiduciary to a use other than that for which they were intended, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] Í7J).
Charge five alleges that the respondent violated his fiduciary duties and obligations as an attorney and escrow agent in that he abdicated control over his attorney escrow account in a mortgage loan transaction to a nonattorney who was related to the borrower/buyer in the transaction, and who caused an overdraft of the account for the benefit of the borrower/buyer, in violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46).
Charge six alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer by violating his fiduciary duties and obligations as an attorney and escrow agent in that he abdicated control over his attorney escrow account in a mortgage loan transaction to a nonattorney who was related to the borrower/buyer in the transaction, and who caused an overdraft of the account for the benefit of the borrower/buyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
Charge seven alleges that the respondent failed to properly supervise the work of a nonattorney he authorized to act in his behalf by allowing that nonattorney to cause a $97,981.34 overdraft in his escrow account absent proper oversight, in violation of Code of Professional Responsibility DR 1-104 (c) (22 NYCRR 1200.5 [c]).
*51 Charge eight alleges that the respondent engaged in conduct reflecting adversely on his fitness as a lawyer by failing to properly supervise the work of a nonattorney he authorized to act on his behalf by allowing that nonattorney to cause a $97,981.34 overdraft on his escrow account absent proper oversight, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
Charges nine and ten emanate from a common set of factual allegations, as follows:
Between in or about 2003 and in or about March 2004, the respondent acted as the closing attorney for Coastal Capital Corp. and/or CIP Mortgage at numerous mortgage loan closings. At some of the aforesaid closings, the fees paid by the borrowers for legal services rendered on behalf of Coastal Capital Corp. and/or CIP Mortgage ranged from approximately $700 to $800 per closing. However, the respondent received only $75 to $100 of the fees paid by the borrowers for legal services rendered on behalf of Coastal Capital Corp. and/or CIP Mortgage. At some of the closings, Doc Prep, Inc., a nonattorney, received most of the legal fees paid, ranging from $625 to $725, for the legal services rendered on behalf of Coastal Capital Corp. and/or CIP Mortgage.
Charge nine alleges that the respondent improperly shared fees with a nonlawyer, in violation of Code of Professional Responsibility DR 3-102 (a) (22 NYCRR 1200.17 [a]).
Charge ten alleges that the respondent engaged in conduct which reflects adversely on his fitness as a lawyer by improperly sharing fees with a nonlawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).
Based upon the evidence adduced, the Special Referee properly sustained all 10 charges. Accordingly, the Grievance Committee’s motion to confirm the Special Referee’s report is granted. The respondent has neither opposed the Grievance Committee’s motion nor otherwise responded.
In determining an appropriate measure of discipline to impose, the Court has considered the respondent’s compelling personal circumstances and the strong character letters offered on his behalf. Moreover, the Court notes that the respondent acted without fraudulent intent, that he neither took nor utilized the money of another, and that he did not profit from the criminal enterprise he enabled by his actions and/or inac *52 tions. However, the respondent was neither candid about the circumstances surrounding the depletion of funds in his escrow account nor willing to accept responsibility for his failure to perform the usual and customary functions of a lender’s attorney in dozens of transactions, which perpetuated a vast criminal conspiracy. The evidence of his malfeasance is overwhelming.
Under the totality of circumstances, the respondent is suspended from the practice of law for a period of four years.
Mastro, A.EJ., Skelos, Angiolillo, Florio and Leventhal, JJ., concur.
Ordered that the petitioner’s motion to confirm the Special Referee’s report is granted; and it is further,
Ordered that the respondent, Thomas F. Cusack III, admitted as Thomas Francis Cusack III, is suspended from the practice of law for a period of four years, commencing June 15, 2012, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than December 15, 2015. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2); and (4) otherwise properly conducted himself; and it is further,
Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Thomas F. Cusack III, admitted as Thomas Francis Cusack III, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Thomas F. Cusack III, admitted as Thomas Francis Cusack III, has been issued a secure pass by the Office of Court Administration, it shall be returned *53 forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).